<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA ROBERTS,<br><br>       Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br>UNITED STATES POSTAL SERVICE,<br>THOMAS BIANCAMANO,<br><br>       Defendants. | Civil Action No. 09-6212 (WJM)<br><br><br><u>OPINION</u> |

<u>**FALK, U.S.M.J.**</u>

  Before the Court are: (1) Defendants' motion to strike two of Plaintiff's proposed trial witnesses [CM/ECF No. 36]; and (2) Plaintiff's cross-motion to reopen discovery to permit "fact witnesses regarding new medical treatment and new expert." [CM/ECF No. 37.] Both motions are opposed. No argument was heard. Fed. R. Civ. P. 78(b). For the reasons that follow, Defendants' motion is **GRANTED** and Plaintiff's cross-motion is **DENIED**.

<u>**BACKGROUND**</u>

  This is a motor vehicle accident case. In August 2007, Plaintiff, Barbara

Roberts, a former Postal employee, claims her vehicle and a United States Postal Service vehicle were exiting the parking lot of the Post Office in Parlin, New Jersey when the two vehicles came together.[1]  Defendants contend that when the accident occurred, the Postal vehicle was moving at no more than five miles per hour.[2]  Plaintiff did not go to the hospital.[3]

On December 9, 2009, Plaintiff brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"), alleging that she suffered injuries to her neck and back in the accident.  Because Plaintiff is pursuing a claim under the FTCA, she is required to file an administrative Notice of Tort Claim, which is required to state the amount of damages sought.  The Notice of Tort Claim is a jurisdictional prerequisite to filing suit and a limit on the amount of recoverable damages.  See 26 U.S.C. § 2675(a); White-Squire v. U.S. Postal Service, 592 F.3d 453, 460 (3d Cir. 2010).  At the time the suit commenced, Plaintiff's Tort Claim Notice sought $150,000 in damages allegedly resulting from the accident, taking the position it was an accident that did not involve substantial and permanent injuries and that Plaintiff was receiving conservative medical

---

[1] Proposed Final Pretrial Order ("PFPO") at 4.

[2] PFPO at 24.

[3] PFPO at 4.

treatment.

On April 27, 2010, an initial scheduling conference was held and Scheduling Order entered.  Discovery was scheduled to close on August 30, 2010, with affirmative expert reports due on September 15, 2010.  Thereafter, discovery and other deadlines were extended on five occasions, four at Plaintiff's request.  Fact discovery eventually closed on June 1, 2011, and affirmative expert reports were due by August 1, 2011, with responsive reports due on September 19, 2011.  The discovery extensions resulted mostly Plaintiff's continuing medical treatment.

In October 2011, after the close of fact and expert discovery, the Court conducted a settlement conference.  Under the FTCA, a plaintiff may not seek damages in a civil action greater than the amount stated in the Notice of Tort Claim.  See, e.g., Schwartz v. United States, 446 F.2d 1380, 1381-82 (3d Cir. 1971).  However, Plaintiff's counsel essentially stated she could not meaningfully discuss settlement because Plaintiff was seeking many multiples of her Tort Claim demand.  Plaintiff took the position that counsel's initial evaluation of the case was incorrect, and that due to unforseen medical events, Plaintiff was totally disabled and the damages greatly exceeded the Tort Claim Notice amount.  As a result, on February 10, 2012, Plaintiff filed a motion to amend her damages claim seeking to increase the amount of damages potentially recoverable to $4,000,000.[4]

---

[4] A plaintiff in a FTCA case can only increase the amount requested "where the increased amount is based upon newly discoverable evidence not reasonably

3

In supporting the motion, Plaintiff went through extensive detail of her medical treatment history up through the time the motion was filed. Defendants failed to submit timely opposition to the motion, eventually submitting a cursory one page letter opposing the request. Under the circumstances, and giving Plaintiff the benefit of the doubt and based on the absence of any legitimate opposition, the Court granted the motion by Order dated March 27, 2012.

Following resolution of the motion to amend, the Court conducted an additional settlement conference and then scheduled a final pretrial conference on May 10, 2012. At the final pretrial conference, held nearly a year after discovery closed, Plaintiff first sought to identify two new potential "expert" witnesses, Dr. Robert D. Huang and Speech Language Pathologist Darcy Abrams,[5] and have them testify at trial. Plaintiff claims that these new witnesses have been identified to address a newly diagnosed medical condition—paralysis of the vocal cord—that is allegedly connected to the 2007 motor vehicle accident. Defendants opposed the request.

---

discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening fact, relating to the amount of the claim." 26 U.S.C. § 2675(b).

[5] During the briefing of these motions, Plaintiff has withdrawn her request for Ms. Abrams to be considered an expert witness and instead has requested permission for her to testify as a fact witness only. (Pl.'s Letter 3.)

**Parties' Positions**

Defendants seek to exclude both witnesses, arguing that they were known (or should have been known) to the Plaintiff long ago; that Plaintiff failed to comply with her discovery obligations under Federal Rule of Civil Procedure 26; that Plaintiff has disregarded and violated the Court's Scheduling Orders; and that introduction of these new witnesses at this late date would be extremely prejudicial and require the reopening of discovery, additional depositions, additional expert reports, and the expenditure of additional time and money.

Plaintiff has countered that the need for these new witnesses only became apparent after the close of discovery; that she recently had been diagnosed with a new condition; and that it would be unfair to preclude evidence of that new condition.

## DISCUSSION

A.   **Legal Standard**

Federal Rule of Civil Procedure 26(a)(1)(A), the initial disclosure requirement, requires disclosure of, among other things, the name, address and telephone number of each individual possessing relevant information, along with the subject of that information, that the disclosing party intends to use to support its claims or defenses.  Id.

A party has a continuing duty to keep their disclosures and discovery

responses current. Rule 26(e)(1)(A) imposes an obligation on a party to update its Rule 26(a) disclosures and discovery responses during the course of a litigation as follows:

> A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1)(A). The obligation to update initial disclosures is meant to ensure that the playing field remains level, narrow the relevant issues, and avoid "undue prejudice and surprise" to the opposing party. Reed v. Iowa Repair & Marine Co., 16 F.3d 82, 85 (5th Cir. 1994); see Poulin v. Greer, 18 F.3d 979, 984 (1st Cir. 1994); Am. Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

Likewise, Federal Rule of Civil Procedure 26(a)(2) provides that parties must disclose their experts and the contents of their reports within the time frame set by the Court. Fed. R. Civ. P. 26(a)(2)(A)-(C). Expert disclosure requirements are meant to ensure the playing field remains level, to afford the opposing party an opportunity to challenge the expert's qualifications and opinions, and to avoid

undue prejudice and surprise.  See Reed v. Binder, 165 F.R.D. 424, 249 (D.N.J. 1994); see also Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 741 & n.6 (7th Cir. 1998).

Rule 37(c)(1) provides that when a party fails to make the required disclosures or supplement their responses, "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Id.  Substantial justification is defined as:

> justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.  The proponent's position must have a reasonable basis in law and fact.

D&D Assoc., Inc. v. N. Plainfield Bd. of Ed., No. 03-1026, 2006 WL 1644742, at *4 (D.N.J. June 8, 2006) (quoting Fitz v. Ralph Wilson Plastics Co., 174 F.R.D. 587, 591 (D.N.J. 1997)).  A failure to disclose is considered harmless "when there is no prejudice to the party entitled to disclosure."  Id.

In evaluating whether a non-disclosure warrants exclusion, the Third Circuit has identified four factors to consider: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery

7

obligation." Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir. 2000). The party who has failed to disclose information bears the burden to show that the non-disclosure was substantially justified or is harmless. See D&D Assoc., 2006 WL 1644742, at *4. The exclusion of evidence is a matter left to the trial court's discretion. See, e.g., Fed. R. Civ. P. 37(c)(1)(A)-(C); Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995) ("[T]he imposition of sanctions under Rule 37 is a matter within the discretion of the trial court.").

**B.     Exclusion of Evidence Under Rule 37(c)(1)**

There is no legitimate dispute that Plaintiff failed to disclose Dr. Huang and Ms. Abrams pursuant to Rule 26 during the discovery period. Indeed, Plaintiff does not mention Rules 26 or 37 in her 3 page letter submitted on the motion. Instead, essentially the only argument Plaintiff makes is a request to extend discovery, with Plaintiff contending that she could not have provided the new witnesses (and presumably their documents and reports) sooner because it was not reasonably available prior to the close of the discovery period.

**1.     Plaintiff's Late Disclosure was Not "Substantially Justified"**

Exclusion is not warranted if the non-disclosure was "substantially justified." Fed. R. Civ. P. 37(c)(1). Plaintiff claims that in "late March/early April 2012" she learned that she had "paralysis of her vocal cord." (Pl.'s Letter at 1.) Plaintiff's contends that this injury results from the car accident that brought about

8

this case. Plaintiff claims that because discovery ended prior to her diagnosis, there was "no way the Plaintiff could ever have reasonably provided this discovery to [] Defendants within the time limits of the scheduling order." (Pl.'s Letter 3.) She further claims that the records supporting the diagnosis were obtained shortly after she learned of the condition and immediately turned over to Defendants' counsel. (Id.)

The reality appears different than Plaintiff suggests. The record shows that Plaintiff was aware of the potential for the alleged vocal condition as early as April 2011. This was two months before the close of fact discovery and more than a year prior to raising the issue with her adversary in May 2012, on the eve of the final pretrial conference.

Plaintiff's own deposition confirms long standing knowledge of throat and voice issues. In April 2011, at her deposition, Plaintiff testified that "[i]n a minute I start to lose my voice," and that she experienced pain in, among other places, "her throat." (Deposition of Barbara Roberts (4/12/11) at 23:24; 39:16.)

The medical records submitted with the motion show that Plaintiff began treating with the office of her newly proposed expert, Dr. Huang, in July 2011, three months prior to the close of expert discovery. (See Declaration of Alex Kreigsman, Esq. ("Kreigsman Decl.") Ex. A at 7; CM/ECF No. 36-4.) Indeed, treatment notes from an office visit on July 11, 2011, state that Plaintiff was

9

"complaining of a 4 month duration of dysphagia [and] hoarseness . . . ." (Id.)

Thereafter, Plaintiff also treated with her proposed expert, Dr. Huang, on September 6, 2011, and February 6, 2012. Treatment notes from the office visit on September 6, 2011, state that Plaintiff was "complaining of a 5-6 month duration of abnormal sensation in the throat [and] throat pain . . . ." (Kriegsman Decl., Ex. A at 6; CM/ECF No. 36-4.) The treatment records from February 6, 2012, suggest the same. (Id.) The September 6th date was prior to the close of expert discovery, and the February 6th date was prior to Plaintiff moving to amend her notice of claim for damages, which was supported by certifications from Plaintiff herself and from counsel that contained detailed and supposedly complete summaries of Plaintiff's medical history (although neither included Dr. Huang or Ms. Abrams).

It seems clear that Plaintiff had been seeking and receiving treatment for throat issues before the close of discovery. Yet, despite the fact the accident occurred five years prior and discovery had been repeatedly extended at Plaintiff's request, Plaintiff did not properly disclose the necessary facts and experts in discovery. Thus, Plaintiff's untimely identification of proposed witnesses Huang and Abrams well after the close of discovery is not "substantially justified."

2. **Application of the Rule 37 Factors**

    i. **Prejudice & Surprise**

This case has been pending for nearly three years. There was an extremely

lengthy period of very active discovery. Discovery was extended on five occasions, four at Plaintiff's request. It was not until the final pretrial conference that Plaintiff notified the Court that she intended to call two additional "expert" witnesses, neither of whom it appears has ever provided all of the information necessary to serve as a testifying expert. At this point, discovery is long closed, the final pretrial conference has been held, and trial is imminent. Allowing additional witnesses (who could have been disclosed long ago) would require a re-opening of discovery and additional depositions and expert reports, all of which could have been avoided if Plaintiff had complied with her discovery obligations. It would also require Defendants to expend additional financial resources and further delay this case which has been pending before the Court for years.

The Third Circuit has found prejudice obvious and exclusion appropriate on substantially similar facts. See Kostantopoulus v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997) (**Alito, J.**)[6]; United States v. 68.94 Acres of Land, 918 F.2d

---

[6] As then-Judge (now Justice) Alito found in upholding exclusion under circumstances similar to those in this case: "The cutoff date for expert witness discovery was extended at least three times before a final cutoff date of January 1992 was set. Nevertheless, [Plaintiff] did not see [physician/proposed witness] until January 1993, one year after the cutoff date, and plaintiffs' trial counsel did not advise opposing counsel that [the physician/witness] would be called as an expert witness until a pretrial conference on July 29, 1993, long after [the witness] was first consulted and approximately three weeks prior to the scheduled trial date. Even then, plaintiffs' trial counsel did not fully comply with his discovery obligations relating to [the witnesses'] testimony, and indeed he had not fully met those obligations when the district court held, on August 13, 1993, that [the witnesses'] testimony would be excluded. Based on these facts alone, we are

11

389, 396 (3d Cir. 1990) (excluding expert witness for party's violation of discovery order); see also Allen v. Parkland School District, 230 Fed. Appx. 189, 195 (3d Cir. 2007) (excluding expert disclosed after scheduling order deadline). Thus Plaintiff's tardy disclosures are clearly prejudicial. See, e.g., Bowers v. Nat'l Collegiate Athletic Assoc., 475 F.3d 524, 541 (3d Cir. 2007); Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir. 2000) (**Alito, J.**) (affirming exclusion based on failure to comply with pretrial discovery obligations and the potential for disruption to proceedings and trial); Sowell v. Butcher & Singer, Inc., 926 F. 2d 289, 302 (3d Cir. 1991); Frolow v. Wilson Sporting Goods, No. 05-4813, 2008 U.S. Dist. LEXIS 27176, at *35-37 (D.N.J. Mar. 31, 2008).

### ii. Ability to Cure Prejudice & Delay in Proceedings

The proceedings would be delayed and curing the prejudice would be complex. If Plaintiff were allowed to add two new witnesses to the case at this time, the trial of the case would clearly be delayed. Defendants would be unable to cure such prejudice without spending additional time and resources. See, e.g., Brooks v. Price, 121 Fed. Appx. 961, 965 (3d Cir. 2005) (affirming district court's exclusion of expert witness when delay to proceedings would inevitably result). As already mentioned, it would also require the reopening of discovery in this three year old case and require Defendants to depose Plaintiff's two new witnesses

---

satisfied that this case qualifies as one involving flagrant disregard of the pretrial order." Id. at 719.

and perhaps commission a new expert report.

While Plaintiff suggests a re-opening of discovery and re-deposing of witnesses could cure the prejudice, this ignores the fact that parties are entitled to some certainty when planning for trial.  Plaintiff's entire theory seems to be based on the premise that her injuries continue to develop and new diagnoses are being made.  The Court has been extraordinarily accommodating in this respect, extending discovery five times.  However, permitting this to go on further creates an unfair and unworkable situation.  Parties are entitled to some certainty as they prepare for trial, and if "newly designated experts . . . [are] permitted . . . without limitation, the need for discovery could be endless." See, e.g., Exxon Corp. v. Halcon, 156 F.R.D. 589, 591 (D.N.J. 1994).  In truth, if Plaintiff's position were accepted, discovery would have the potential to continue forever. Cf. Suarez v. United States, 22 F.3d 1064, 1065-66 (11th Cir. 1994) ("Although [plaintiff] claims he has not yet reached full mental health since his encounter with the government, this will necessarily be the case in a number of situations where a tortious act occurs.  It is quite normal for full recovery, both physical and mental, to require . . . years . . . .").  As every new or altered diagnosis is made, there would be the need for additional fact discovery, expert reports, and depositions.  This creates an untenable situation for opposing counsel preparing for trial.  See Exxon Corp., 156 F.R.D at 591.  The Court concludes that there is no reasonable

way to cure the prejudice in this case absent extensive discovery, costs, and delay.

### iii. Bad Faith

Bad faith is often shown through violation of scheduling orders coupled with unsatisfactory explanations. See, e.g., Exxon Corp., 156 F.R.D at 591. Here, discovery closed more than a year ago, and the discussion above discloses how Plaintiff was, in fact, aware of the facts relating to her vocal claim long before discovery closed. Adding new witnesses, including an expert, at this late stage of the proceedings is precisely the type of prejudice and surprise that the Federal Rules and the Court's Scheduling Order are designed to prevent. The Court does not find bad faith. However, it is enough to say that "the inequity of the untimely disclosure" precludes grant of leave by the Court. See, e.g., Pfizer v. Ivax, No. 07-174, 2009 WL 1885100, at *5 (D.N.J. June 29, 2009).

### iv. Summary

Plaintiff's untimely disclosure of two witnesses at the pretrial conference is not substantially justified or harmless. Plaintiff was aware that she was having issues with her throat prior to the close of fact discovery in June 2011 and expert discovery in September 2011. Indeed, she sought treatment from Dr. Huang's office twice prior to the close of expert discovery. Plaintiff did not update her discovery as required by the Rules and attempted to name two new witnesses at the final pretrial conference and on the eve of trial. It would be prejudicial to the

Defendants to excuse Plaintiff's neglect, allow these witnesses, delay the case, and require Defendants to only now begin to investigate these claims. The Court has been quite liberal about extending discovery in this case. At this point, the only fair result is exclusion.

**Plaintiff's motion to re-open discovery**

Plaintiff has filed a "cross-motion" to re-open and supplement discovery. This motion is supported by the same three page letter that Plaintiff submitted in opposition to the motion to strike. Motions to alter scheduling orders are generally governed by Federal Rule of Civil Procedure's Rule 16(b)'s good cause standard and the Court's broad discretion in the conduct of discovery. See In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) ("We will not upset a district court's conduct of discovery procedures absent a demonstration that the court's actions made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible.").

There is no basis to re-open fact discovery for the same reasons that exclusion is appropriate. Plaintiff's alleged vocal condition was known prior to the close of an extended period of discovery, treatment was sought for the alleged condition with the proposed expert while expert discovery was open, and it was discussed during Plaintiff's deposition. Plaintiff had years of discovery and received four extensions. Discovery finally closed nearly a year ago. In sum,

Plaintiff provides no legitimate reason to re-open discovery.  See, e.g., LeBoon v. Lancaster Jewish Community Ctr. Ass'n, 503 F.3d 217, 235 (3d Cir. 2007) (affirming denial of motion to re-open discovery filed two months after close of extended discovery period); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 505 n.7 (3d Cir. 1997); see also Lander v. ABF Freight Sys., Inc., 459 Fed. Appx. 89, 93 (3d Cir. 2012) (affirming district court's denial of request to extend discovery); Maslanka v. Johnson & Johnson, Inc., 305 Fed. Appx. 848, 853 (3d Cir. 2008); Spring Creek Holding v. Keith, No. 02-376, 2006 WL 2403958, at *3-4 (D.N.J. Aug. 18, 2006).

## CONCLUSION

For the above stated reasons, Defendants' motion to strike Plaintiff's proposed witnesses is **GRANTED**, and Plaintiff's motion to re-open discovery is **DENIED**.

        s/Mark Falk
        **MARK FALK**
        **United States Magistrate Judge**

**Dated: June 22, 2012**