UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA ROBERTS,<br><br>*Plaintiff,*<br><br>v.<br><br>THOMAS BIANCAMANO, et al.,<br><br>*Defendants.* | No. 09 Civ. 6212 (WJM) (MF)<br><br>OPINION |

## INTRODUCTION

This Federal Tort Claims Act ("FTCA") action arises out of an August 3, 2007 collision between a United States Postal Service van and Plaintiff Barbara Roberts's automobile. On January 30 and 31, 2013 the Court conducted a non-jury trial concerning liability only, in which it had the opportunity to observe the manner and demeanor of the witnesses and to assess their credibility. Following trial, each party submitted proposed findings of fact and conclusions of law.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law regarding liability in accordance with Federal Rule of Civil Procedure 52(a). For the reasons that follow, the Court finds for the Defendant and against the Plaintiff.

## JURISDICTION, VENUE, AND APPLICABLE LAW

1. The Court has jurisdiction over the subject matter of this action under the FTCA, 28 U.S.C. §§ 1346(b)(1) and 2679(a), which provides a remedy against the United States for injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."

2. The Court has personal jurisdiction over the parties to this action, as both reside in this district.

3. Venue in this District is proper under 28 U.S.C. § 1402(b).

4. A claimant may recover under the FTCA only "under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act of omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. §§ 2672, 2674. That is, a claimant may recover against the United States only to the extent that recovery would be permitted against a private party under the substantive law of the state where the conduct complained of took place. *Richards v. U.S.*, 369 U.S. 1, 6-16 (1962); *Rodriguez v. U.S.*, 823 F.2d 735, 739 (3d Cir. 1987). In this case, it is undisputed that the conduct complained of took place in New Jersey; accordingly, the Court applies New Jersey negligence law.

5. To recover in a negligence action in New Jersey, a plaintiff must establish: 1) that the defendant owed her a particular duty under the circumstances that gave rise to this action; 2) that the defendant somehow breached that duty; and 3) that the defendant's breach of duty proximately caused her to suffer some damage or harm. *See Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990); *Griesenbeck v. Walker*, 199 N.J. Super. 132, 141 (App. Div. 1985), *cert. denied*, 101 N.J. 264; *Catto v. Schnepp*, 121 N.J. Super. 506, 511 (App. Div. 1972), *aff'd*, 62 N.J. 20.

6. Under New Jersey law, negligence is conduct falling below a standard recognized by law as essential to protecting others from the unreasonable risk of harm – but will not be presumed merely because someone has been harmed. *Sanzari v. Rosenfield*, 34 N.J. 128, 134 (1961); *Murphy v. Terzako*, 14 N.J. Super. 254, 259 (App. Div. 1951).

7. Rather, a plaintiff must prove by a preponderance of the evidence that a defendant's negligence caused an injury before recovery will be allowed. *See Buckelew v. Grossbard*, 87 N.J. 512, 525 (1981).

8. The preponderance of the evidence standard requires the plaintiff to provide evidence showing that it is more likely than not that the defendant was negligent. *Crowley v. Chait*, No. 85-2441, 2004 WL 5434953, at *6 (D.N.J. Aug. 25, 2004).

9. Under New Jersey's comparative negligence law, a plaintiff who is found to be fifty percent or less at fault is entitled to a recovery, but any award of damages is diminished by the percentage of fault attributed to her. N.J.S.A. 2A:15-5.1; *Brodsky v. Grinnell Haulers, Inc.*, 181 N.J. 102, 109 (2004); *Ostrowski v. Azzara*, 111 N.J. 429, 445-46 (1988).

10. However, a plaintiff's own negligence will wholly bar recovery if it is "greater than the negligence of the person against whom recovery is sought." N.J.S.A. 2A:15-5.1.

11. To determine whether a plaintiff is comparatively negligent, the factfinder should determine whether the plaintiff "was moving about in the world in a way that posed an unreasonable risk of physical injury to herself." *Tose v. Greate Bay Hotel & Casino, Inc.*, 819 F. Supp. 1312, 1315 (D.N.J. 1993). Thus, individuals in New Jersey have a duty to "not place themselves in positions of unreasonable physical danger." *Id.*

12. In a non-jury trial, the Court must "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).

13. In its role as factfinder in a tort case involving motor vehicles, the Court may view and rely on post-collision photographic evidence of the damage to the parties' vehicles without reliance on an expert witness. *See, e.g.*, *Caputo v. U.S.*, 157 F. Supp. 568, 570-71 (D.N.J. 1957).

## FINDINGS OF FACT

14. The parties have stipulated that the accident occurred on August 3, 2007 at approximately 4:07 p.m., as Thomas Biancamano, a U.S. Postal Service employee acting within the scope of his

employment, was attempting to exit the parking lot of the Post Office in Parlin, New Jersey while operating a Postal Service 2001 Dodge Ram van.

15. The parties have further stipulated that "an impact occurred between the right side of [the] van and the left front of a 1999 Dodge Stratus driven by Plaintiff, who was positioned to the right of Mr. Biancamano's vehicle in the parking lot exit," and that Plaintiff's daughter, Latiesha Gooding, was a right front seat passenger in Plaintiff's vehicle at that time.

16. The Court takes judicial notice of the fact that at the site of the accident, Washington Road is a paved, asphalt roadway running east-west, with one travel lane in each direction separated by a double yellow centerline, and no shoulder or parking lanes.

17. According to unchallenged measurements taken after the accident by Biancamano's then-supervisor Ellery Ramos, the parking lot exit is approximately 21 feet, 5 inches wide and divided by a faded line into an approximately 12 foot, 9 inch left exit lane and approximately 8 foot, 6 inch right exit lane (there is apparently a separate entrance elsewhere); photographs of the site admitted into evidence demonstrate a faded left and right turn arrow painted on the pavement in the respective lanes, and a stop sign situated where the exit meets Washington Street. *See* Plaintiff Exhibit 3-L.

18. Biancamano works as an "Area Maintenance Specialist" for the United States Postal Service.

19. At the moment of the accident, Biancamano was traveling to the Old Bridge Post Office.

20. Biancamano testified that at the moment he drove up to the parking lot exit, there were no other vehicles waiting there.

21.     Both Biancamano and Postal driving instructor Michael Matelski (whom Plaintiff called as a witness)[1] testified that Biancamano's van was too long or otherwise unwieldy to turn right onto Washington Street from strictly within the right exit lane without either the van's front crossing the double-yellow lines into oncoming traffic in the west-bound lane, or else cutting over the curb with its rear wheels.

22.     Matelski further testified that the lanes at the exit were too narrow and that the exit should really be marked as a single lane.

23.     Accordingly, Biancamano testified that he positioned his van somewhat over the line separating the right and left lanes – the parties dispute how far – in order to make a wider or shallower right turn into the oncoming east-bound lane of Washington Street.

24.     Biancamano testified that he drove up to the exit ramp, activated his right turn signal, turned his steering wheel to the right, and then waited a minute or two for an opening in the oncoming traffic on Washington Street before proceeding to make his turn.

25.     Biancamano testified that he progressed only several feet into the turn before he heard a "scraping" sound and stopped the van; although he testified that his window was open at the time, he denied hearing a horn honking.

26.     At the time of the accident, Plaintiff worked for the Postal Service, and she and Biancamano were co-workers.

---

[1]     Matelski was apparently assigned to check and critique Biancamano's driving following one or more accidents.  The Court deems any evidence of a prior accident involving Biancamano as inadmissible "character," "propensity," or "prior act" evidence under Federal Rule of Evidence 404(a) and (b).  Further, the Court deems any evidence concerning Matelski's instruction of Plaintiff an inadmissible "subsequent remedial measure" under Federal Rule of Evidence 407.  However, the Court admitted and will consider Matelski's testimony regarding his personal observations of the scene of the accident, as well as any admissions made in his presence by Biancamano.

27.     Plaintiff testified that prior to the accident, she had travelled to the Parlin Post Office with her daughter to pick up mailbox keys for her newly purchased home, which she then intended to show her daughter.

28.     Plaintiff testified that she approached the parking lot exit first – in other words, that there were no other vehicles ahead of her; that she activated her right turn signal and stopped in the right lane of the exit for one to two minutes, behind the line where a sidewalk would intersect the ramp, although there was no sidewalk at that location.

29.     Plaintiff further testified that Biancamano then drove up suddenly in the left lane with his left turn signal on, moved straight and leftward into the street as though he were attempting to cross Washington Road and proceed in the westbound lane, but then suddenly turned sharply right and collided with Plaintiff's car; Plaintiff further testified that she blew her horn strenuously to warn Biancamano, but to no avail.

30.     This sequence of events, Plaintiff stated, took only two or three seconds.

31.     Plaintiff testified that the impact threw her car to the right, causing her body to jerk to the right and side-to-side; she further testified that her car was dragged several feet.

32.     Plaintiff's testimony was generally hesitant and uncertain, and also contained several factual inconsistencies.

33.     Plaintiff first testified that she was stopped at the moment of impact and waiting for Biancamano to "clear" the turn, although she conceded that her car might have been moving forward somewhat when it occurred.

34.     Plaintiff conceded on cross-examination that at her deposition she had characterized her car as "behind" the van; she then explained that she meant that the van pulled up ahead of her after she was at the stop first.

35.     Plaintiff testified that she could see that the van's left turn signal was activated, as well as approaching traffic from the left, despite the van's position to her left; Plaintiff explained that this was because the van pulled so far out ahead of her before attempting to turn.  This is inconsistent with Plaintiff's admissions in the Final Pretrial Order that "Biancamano caused the plaintiff's view of traffic to her left to be partially blocked, causing her to have to wait for him to move before she could make her right turn."  FPTO, Pltf. Contested Fact No. 4, at 6.[2]

36.     Gooding testified that she could recall few details of the accident, although she, like Biancamano, described hearing a "scraping" sound as it occurred.

37.     Sayreville Police Department Patrolman Frank Olchaskey responded to the call roughly ten minutes later.

38.     Patrolman Olchaskey spoke to Plaintiff, Biancamano, and Gooding; there were apparently no other witnesses.

39.     Patrolman Olchaskey wrote a report about the incident largely based on, and summarizing his conversations with the witnesses.  He reported Plaintiff as stating that she had been "behind" Biancamano's vehicle.[3]

---

[2]     Factual assertions in pretrial orders are generally considered judicial admissions, conclusively binding on the party who made them.  *See, e.g.*, *Friedmann v. U.S.*, 107 F. Supp. 2d 502, 511 (D.N.J. 2000).

[3]     Most of the report's contents or conclusions are based on what the witnesses told Olchaskey – which was hearsay – and are thus inadmissible as evidence.  *See Broomes v. Schmidt*, No. 95 Civ. 4845, 1996 WL 724031, at *3 n.4 (E.D. Pa. Dec. 13, 1996) ("Entries in a police report, unless based on the recording officer's own knowledge and observation, are generally inadmissible as hearsay.") (citing *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) *and Vanderpoel v. A-P-A Transp. Corp.*, No. 90 Civ. 5866, 1992 WL 158426 (E.D. Pa. July 1, 1992)).  "Thus, any statement by a driver in an accident to the recording officer is ordinarily inadmissible."  *Id.*  However, Plaintiff's statement to Olchaskey was admissible on cross-examination as an opposing party admission under Federal Rule of Evidence 801(d)(2).

40.     Biancamano took pictures of the accident site and vehicles involved.  These photographs were introduced into evidence.

41.     Plaintiff has suggested that Biancamano intended to cross over Washington Road and turn left into its westbound lane, but changed his mind at the last moment in light of the heavy oncoming traffic in the westbound lane; but if the van had proceeded far enough into the street that Plaintiff could see its left turn signal despite being on its right side, it is not clear how the van was not already jutting into the westbound lane, and thus as easily able to turn left as right.

42.     It is also not clear how the van could have been so far ahead of Plaintiff, yet impacted her in the manner she alleges when it turned right.

43.     The Court finds that the most probative evidence in this case comes from the pictures taken by Biancamano immediately following the accident.

44.     Plaintiff's Exhibit 3-A, the clearest photograph of damage to the van, shows relatively minor scrapes and dents along the bottom of the passenger-side doors, appearing to run roughly from the front of the rear wheel well to the back of the front wheel well.

45.     Plaintiff's Exhibit 3-K, the clearest photograph of the damage to Plaintiff's car, shows that the left front headlight and parking light were knocked out.  It also shows scraping on the left side of the front bumper (in other words, the part that wraps around to the driver's side of the car) and on the forward-most part of the side body panel separating that portion of the fender and the front wheel from the hood.  The scrapes appear to run in rearward lines.  There is also a c-shaped dent in the same body panel several inches above and to the left of the front wheel, and it appears to point inward and backward roughly toward the driver's seat.  This photograph, as well as a view of the front of the car in Plaintiff's Exhibit 3-R show no other damage to the front fender (despite Plaintiff's contention on page 7 of the Final Pretrial Order that "the front bumper

of the plaintiff's vehicle" had fallen off), the grill, or the hood.  An inward pointing dent is consistent with Plaintiff accelerating forward into Biancamano as he was making a right turn.

46.    Plaintiff's theory of the accident does not comport with the physical evidence.  Plaintiff maintains that the accident occurred with her standing still and Biancamano making a sharp right turn into her car.  That turn had enough force to throw her car to the right, cause her body to jerk to the right and side-to-side, and drag her car several feet.  Had the impact occurred as Plaintiff alleges, common sense suggests that the denting and scrapes to Plaintiff's car would point away from the driver's seat, toward the front of the car, and that the damage to Defendant's vehicle would have been more significant.  Alternatively, had the van scraped Plaintiff's car while driving forward, the denting would point forward instead of backward, and the front fender would have been pushed or pulled forward and at least partially off the car.  But the photographs demonstrate that neither occurred.

47.    Plaintiff's exhibits 3-B, L, M, and N show the exit where the accident occurred.  They demonstrate that the right exit lane is narrower than the left, and that the arrows and dividing line are faded – and the line is completely invisible within the final few feet before the curb.  The photographs also show that there is minimal or no shoulder between the exit and Washington Road – corroborating the evidence that a large vehicle cannot turn sharply right from the right exit lane onto the eastbound side of the street without either crossing into opposing traffic or crossing over the right-hand curb.

48.    The photographic evidence strongly suggests—and the Court finds—that the impact here was indeed a scraping – as described by Biancamano and Gooding – and that Plaintiff herself more probably than not caused it by attempting to squeeze past Biancamano on his right, in an area too narrow for her car, while he was attempting a right turn.  It also demonstrates that

Biancamano was positioned at least somewhat straddling the lanes as he said, and that a reasonably prudent driver in Plaintiff's position would have allowed him to proceed first, without attempting to pass him on the side, because there was not enough room to do so safely.

49. The Court finds, in light of the weight of the photographs, the witness' testimony, and its own assessment of the witness' credibility, that Biancamano reached the exit first and waited while signaling right and straddling both lanes, and that at the moment he attempted to turn right, Plaintiff attempted to drive past him on the right side and scraped her car against his van.

## CONCLUSIONS OF LAW

50. Drivers may assume that others will observe the proper standard of conduct, and, for that reason, the duty of reasonable care between drivers upon highways is mutual. *Tichenor v. Santillo*, 218 N.J. Super. 165, 170 (App. Div. 1987).

51. This duty includes making "such observations for traffic and vehicles which are or may come into his path of travel, as a reasonably prudent person would make." *McGowan v. Barry*, 210 N.J. Super. 469, 473 (App. Div. 1986), citing *Greenfield v. Dusseault*, 60 N.J. Super. 436, 441 (App. Div.), *aff'd* 33 N.J. 78 (1960).

52. However, "[t]he duty of a driver to exercise due care does not require him to anticipate that persons not in his path of travel will suddenly place themselves there." *Biruk v. Wilson*, 50 N.J. 253, 262 (1967). Thus, Biancamano had no duty to anticipate that Plaintiff would suddenly attempt to squeeze past him on his right side and turn right before he did.

53. The Court finds that in light of the conditions at the site of the accident, the fact that he arrived there first, and the nature of his vehicle, Biancamano acted as a reasonably prudent person would have under the circumstances by attempting to drive out of the parking lot from the middle of the exit so as to avoid turning into oncoming traffic or jumping the curb.

54.     Plaintiff has argued that even if she attempted to pass Biancamano on his right, if he was in fact attempting a right turn from a position between the right and left turn lanes of the exit, then he created an "ambiguous situation" and should bear the culpability for any accident that resulted from it.  The Court concludes instead that a reasonably prudent person in Plaintiff's situation would have observed the Postal van straddling both exit lanes and preparing to make a wide right turn onto a busy street with no shoulder – and waited for it to do so before attempting to squeeze in and turn right.

55.     Defendant has proven by a preponderance of the admissible evidence presented that Plaintiff's careless and rushed driving was at least fifty percent at fault for the accident, and therefore Plaintiff was more than 50% comparatively negligent and is accordingly barred from any recovery.

56.     For the reasons noted above, Plaintiff is not entitled to prevail on any of her claims contained in the Complaint, and this case must be closed.  An appropriate form of order and judgment accompanies this memorandum opinion.[4]

                    /s/ William J. Martini
              **WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 26, 2013**

---

[4] On January 11, 2013, Plaintiff moved *in limine* to bar Defendant's liability expert Scott D. Batterman, Ph.D, P.E. from testifying. ECF No. 49-1. Defendant did not call Dr. Batterman to the stand during the liability phase of the trial. Because there will not be a damages phase of this trial, the Court **DENIES** Plaintiff's motion as moot.